The opinion of the Conrt was delivered by
Fenner, J.
This action is based upon a contract entered into between plaintiff and defendants, on August 26th, 1876, the essential terms and conditions of which are the following:
The defendants bound and obligated themselves to build and erect, on brick foundations, for plaintiff, in the main yard of the Natchez Cotton Press, in this city, a 73 inch cylinder “ Tyler Press,” according to certain specifications, and of certain quality of materials and workmanship, named in the contract, the same to be constructed “ to the entire satisfaction of said Levi A. Levy, Jr.;” and to be so completed and finished, and in good running- order and ready to be delivered to said Levy, on or before the 11th of October, 1876; in default whereof, it was stipulated, that the defendants should forfeit and pay to Levy, “ fifty dollars per day for each and every day that the said press and appurtenances shall remain unfinished and undelivered, which sum he shall be allowed to retain as liquidated damages out of any moneys that may be due ox owing-by him, for or on account of this contract.”
It cannot, as we conceive, admit of dispute, that under a proper construction of this contract, the obligation of defendants was to construct and have ready to be delivered at the date stipulated, not simply a *212 press, not any press, but a press constructed according to the terms of the contract, and to the satisfaction of plaintiff; and that the delay, for which damages were stipulated, might have resulted, not only from the total inexecution of the contract, by failure to construct or complete, within the term any press whatever, but equally from a partial inexecution, by constructing and delivering a press which did not comply with the contract.
The original petition of plaintiff set forth the provisions of the contract, and simply averred, “ that the defendants heroin failed to comply with the terms and conditions of their contract, in this: that they failed to deliver the press completed, on the date fixed by said contract; that he did not receive or accept said press on said day; that said press was delivered and accepted by him, as finished and completed, only on the 6th of July, 1877; and that the negligence and delay of defendants in complying with the terms and conditions of their contract, has caused petitioner damage to an amount equal to, if not exceeding, that fixed by the contract; ” and he claims the stipulated damages for the whole term, from October 11th, 1876, to July 6th, 1877. It is manifest that the terms of this petition are broad enough to cover delay caused either by non-execution, or by defective and imperfect execution of the work; and, while objectionably vague, it strongly suggests that the complaint is levelled at the delay from the latter cause.
We therefore think there was no inconsistency or change of cause of action in the supplemental petition, wherein plaintiff alleges, substantially, that defendants did construct and present for delivery, a press, claimed by defendants to be such as was required by tlie contract, which, under the exigencies of his business, he took charge of and attempted to operate, under the supervision and with the assistance of defendants, but which lie never accepted as satisfactory, or as in compliance with the contract, until July 6th, 1877. He avers sundry imperfections and defects of workmanship and material, in violation of the contract; that the press worked imperfectly and unsatisfactorily; that it frequently broke down and required repairs, during the iiorformanoe of which its operation was often entirely suspended for considerable periods.
This state of affairs continued until June, 1877, when, after numerous repairs had been made by defendants, the question as to whether the press was then in acceptable condition was, by agreement of parties, referred to Mr. Tilton, as expert and arbitrator, who reported, recommending certain alterations in, and additions to, the press, which when done, “would, in Ms opinion, put the press in acceptable condition.”
‘ Whereupon, defendants executed the required work, and on the 6th *213 «lay of July, 1877, tlie press was, for tlie first time, accepted by plaintiff as satisfactory, and in compliance with the contract.
The supplemental petition sets forth, with great particularity, the various defects in the construction of the press, and the various accidents, imperfections and. detentions resulting therefrom, and alleged numerous items of actual and special damages resulting to him, far ■exceeding in amount the stipulated damages for the entire term; but it renewed the prayer of the original petition, which was for the stipulated damages only. These allegations were entirely appropriate to the relief, as conducive to the allowance of tlie entire penalty, under the discretion vested in the Judge by Article 2127, C. C., which provides, that “ the penalty hiay be modified by the Judge, when the principal obligation has been pafthj executed.” The exception to the supplemental petition, on the ground of inconsistency and change of «original cause of action, was, therefore, properly overruled.
The defendants, however, object to the maintenance of the action, on the ground that there was neither allegation nor proof that defendants had been put in default, both of which, they contend, are essential in such a suit.
The contract sued on is an obligation with a penal clause, the latter being “ a secondary obligation entered into for the purpose of enforcing the performance of the primary obligation.” C. C. 2117.
“ The penal clause is the compensation for the damages which the creditor sustains by the non-execution of the principal obligation.” C. C. 2125.
“ Whether the principal obligation contain, or do not contain, a term in which it is to be fulfilled, the penalty is forfeited only when he who has obligated himself * * is in default.” '
Under these textual provisions, in actions to enforce penal clauses, two inquiries must be made, viz: 1. Has the obligor failed to perform tlie primary or principal obligation ? 2. Is he in default ?
As to the first question, if the evidence otherwise left it in doubt, which it does not, the agreement to arbitrate the report of the arbitrator selected jointly by plaintiff and defendants, and the action had on his report would conclusively settle it. ' They establish beyond question, that up to that time, the press had not been accepted by plaintiff, and was not “ in acceptable condition,” according to the requirements of the contract.
As to the second question, we consider that the construction upon plaintiff’s premises and delivery to him of a press constructed unskilfully and not in accordance with the contract, was an active violation of the contract, which ipso facto placed defendants in default, without the necessity of any formal putting in mora.
*214 Such has been the uniform jurisprudence of this Court, notwithstanding the broad terms of Art. 1931, C. C. Lobdell vs. Parker, 3 La. 331; Martin vs. Pollard, 9 La. 174; Cable vs. Leeds, 6 A. 293; Nicholson vs. Desobry, 14 A. 81; Hill vs. Penny, 15 A. 212.
It is a mere play upon words to say that in an action for- delay in delivery, plaintiff claims damages for delivery of imperfect and insufficient work. Properly speaking, it is not a question of delivery, it is a question of performance of the primary obligation, for the enforcement of which the penal clause was provided. The delivery of an imperfect press, not conforming to the contract requirements, was not the delivery contemplated by the contract; was not a performance of the contract; was, on the contrary, an active violation of the contract, and did not prevent the running of the delay and the accruing of the penalty— subject to equitable abatement under C. C. 2127, in consideration of advantages which the plaintiff might have derived from the partial execution.
Another objection to plaintiff’s recovery, urged on the oral argument of defendant’s counsel, though not insisted on iu his brief, is this : that by taking possession, and making use of the press as constructed, and by subsequent acceptance of the same after further work done upon it, and by paying the entire contract price without deducting the damages now claimed — plaintiff waived and remitted his right to such damages.
As to the taking possession and use of the defective press, it is to be considered that it was erected upon brick foundations on the premises of plaintiff, and is, therefore, subject to the same principles which are applicable to defective buildings on a man’s land, or defective repairs on his house, or defective ploughing in his field, or defective engines and boilers put in Ms ship. In such cases a man is put in possession by the very construction of the work on his premises, as a concomitant of Ms possession of the premises themselves, .and he has the right to make such use of it as its defective condition will admit of, without thereby waiving his right to damages. Smith vs. Brady, 17 N. Y. 173; Munroe vs. Blunt, 8 Ell. and Black, 749; Wenhurst vs. Deely, 2 Man. G. and Scott, 253; Railroad Co. vs. Smith, 21 Wall. 250; Stewart vs. Fulton, 31 Mo. 59; Findley vs. Breedlove, 4 N. S. 105; Conery vs. Noyes, 17 A. 203.
Principles differing to some extent might apply to the case of independent chattels, such as a piece of furniture or a carriage, constructed under contract, as to which the party would have a clear and convenient option of taking or leaving.
As to payment of the price without retaining therefrom the damages as authorized by the stipulation in the contract, it is held by high authorities that such a stipulation is one exclusively for the benefit of *215 the party, which lie can waive without prejudice to his right to recover damages in a separate action. Duckworth vs. Allison, 1 Mees and W. 412; Riggs vs. Burbridge, 15 id.; Smeed vs. Ford, 1 Ell. and Ell. 602; Benjamin vs. Hilliard, 23 How. 162.
Such settlement may afford some evidence of waiver or remission, but certainly not by itself sufficient. Remission is in the nature of a donation, a gratuitous abandonment of a right., not to be inferred except from acts clearly inconsistent with any other hypothesis. In this case, we consider that the receipts taken by the plaintiff, contain in themselves, clear evidence that he did not intend to abandon his right to damages. They contain language carefully excluding the idea that he intended by the payment to admit this completion of the work or to exonerate the defendant’s from their obligations under the contract.
After careful scrutiny of the evidence, we are unable to satisfy ourselves that the judge erred in his computation of the amount of time lost by plaintiff in the working of the press, by reason of its defective, construction, or in the abatement of -the- penalty which he allowed defendants on account of -the benefits derived by plaintiff from its partial execution. Nor do we think he erred in charging Schwartz. & Bro. with the amount, paid to their co-defendant, Golding, for the repairs made by the latter within one year from the date of the final acceptance of the press.
On July 6th, 1877, when the acceptance and final payment took place,a document was drawn declaring that the defendants “ do hold themselves responsible for all repairs and- breakages for the next twelve months, provided such repairs or breakages are not owing to tlie negligence or fault of the party of the second part, as per terms of contract.” , .
This was signed by M. Schwartz & Bro., to whom the money, had been paid, and who promised and bound themselves to procure the signature of Golding, which they neglected-to do. As to Schwartz & Bro., certainly this agreement must be considered as if signed by Golding. Subsequently, and within the year,’ the centre piece of the “lower platen” of the press broke. Mr. Golding was immediately notified and called on to repair it. He made a new piece and sent it to the press, but refused to deliver it unless plaintiff paid for it, which plaintiff did, under protest, and under the compulsion resulting from the necessities of his business, which could not brook delay. There is no suggestion of any negligence fault on 'the part of the plaintiff, and we think the evidence sufficiently establishes that the breakage was such as defendants were bound to repair. Golding was the proper person to call on for the repair, because he was the one of defendants who had a foundry, who built the press, and was in condition to do the work. There is no merit *216 in tlie defense of Schwartz & Bro. that they were not personally notified. Tlie notice to their co-defendant and the doing of the work by him, was sufficient. Both defendants were bound to .bear the expense of the Tepairaud must refund the sum which plaintiff has paid therefor.
Judgment affirmed at appellants cost.
Rehearing refused.